**UNITED STATES of America, Plaintiff,**

v.

**William SHEPPARD, Defendant.**

**No. 82 Cr. 464 (MP).**

United States District Court,
S.D. New York.

Nov. 15, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for U.S. of America.

Jon M. Kaufman, P.C., New York City, for defendant.

## MEMORANDUM

MILTON POLLACK, Senior District Judge.

Defendant William Sheppard moves, pursuant to Rule 32(c)(3)(D), Federal Rules of Criminal Procedure, and 28 U.S.C. § 2255, to correct alleged factual errors in the presentence report prepared by the United States Probation Office at the time of his sentencing on December 17, 1982. Sheppard claims that his trial attorney, Morton Berger, Esq., failed to take the steps necessary at the time of sentencing to correct the report; Sheppard asserts that this alleged error by his trial lawyer amounts to ineffective assistance of counsel at the time of sentencing. Sheppard boldly asserts on this motion that he did not have the opportunity to review the report before sentencing, nor was he informed of his right to review and correct the report.

Sheppard is now represented by his fourth privately retained attorney. As stated above, he was represented at the trial by Morton Berger of Spring Valley, New York; Mr. Berger was supplanted on Sheppard's unsuccessful appeal by Richard D. Weinberg, Esq., of the firm of Shereff, Friedman, Hoffman & Goodman in New York City; Mr. Weinberg, in conjunction with Mr. Berger, subsequently represented Sheppard in his motion for a new trial. They, in turn, were supplanted on Sheppard's unsuccessful appeal from the denial of a new trial by Barry A. Fisher, Esq., of the Los Angeles, California firm of Fisher & Moest; Mr. Fisher now is replaced by Sheppard's present counsel, Jon M. Kaufman, P.C., of New York City, on this application.

The background of Sheppard's conviction has been set forth in more detail in this Court's unreported opinion, dated January 7, 1985, denying Sheppard's motion for a new trial. Briefly, that background is as follows:

Sheppard was convicted in September 1982 of partnership in a scheme whereby $1,256,356.80 was embezzled from Bankers Trust Company by employees of the bank, and laundered through Sheppard. The funds were embezzled in the form of two official bank checks which Sheppard, on behalf of the co-conspirators, deposited in a bank account he opened for purposes of the scheme. The money was converted into gold coins, ordered and received by Sheppard, then into cash, and finally divided among the co-conspirators.

Sheppard's five partners in the embezzlement all pleaded guilty to the conspiracy prior to trial; two pleaded guilty to one count of embezzlement, and one to the count of wire fraud. Three of Sheppard's business partners testified at the trial as government witnesses. Through their testimony, the testimony of a bank investigator, an examiner of questioned documents, and documentary evidence, as well as the testimony of Sheppard himself, who took the stand, he was firmly planted in the criminal partnership. Sheppard's conviction was unanimously affirmed by order of the Court of Appeals for the Second Circuit

on May 19, 1983. He surrendered for confinement on April 10, 1984.

Sheppard specifically states in his moving papers on this motion that "[n]o hearing of this motion is requested." The papers submitted in support of this motion consist of an affidavit by Carol Sheppard, wife of the defendant, a "certification" by Sheppard, some photocopies of documents submitted as exhibits in support of the motion, and a memorandum of law.

The thrust of Sheppard's claims on this motion, as stated in the moving papers, is that "Sheppard did not have the opportunity to review the [pre-sentence] report before sentencing, nor was he informed of his right to review and correct the report." Probation records, however, establish that Mr. Berger, Sheppard's attorney of record at that time, reviewed and commented upon the pre-sentence report on November 5, 1982, well in advance of sentencing. When the report was handed to Mr. Berger it was accompanied by a disclosure form used by the Probation Department. The disclosure form reads "Please indicate on the bottom of this form agreement with or objection to the facts as submitted in the report. Those specific parts of the report to which you object should be listed thereafter."

To acknowledge disclosure of the presentence report to him, Mr. Berger signed the form at 9:45 on November 5, 1982. In the section provided for comments, he wrote, with regard to the statement that medical coverage existed from "the defendant's employment as a teacher with the Scotch Plains, New Jersey Board of Education:"

> Page 5—regarding medical coverage—insurance—not defendant's employment as a teacher—wife's employment as a teacher.

That objection was reviewed and the following change and correction was recommended by the Probation Department to the report:

> As noted correctly by defense counsel, the reference on page 5 to medical coverage pertains to the defendant's wife's employment as a teacher, not the defendant.

The correction, not really material on the sentencing, was duly considered by this Court.

Subsequently, after Sheppard had surrendered at the Federal Prison Camp, Danbury, and pursuant to his request to prepare himself for a pre-parole hearing, Sheppard himself reviewed the probation report. No objection was voiced by Sheppard during the intervening eighteen months between that date, May 17, 1984, and the present attack on the content of the report.

On another occasion, November 12, 1984, Mrs. Sheppard communicated with this Court concerning the report because of her husband's prospective appearance before the Parole Board. She stated, in general legalistic terms regarding "the presentence report prepared by (sic) the Court," "that there are substantial misstatements of relevant fact contained in the report," and she requested a copy "to determine whether it does or does not include errors of fact."

In response to Mrs. Sheppard's communication, this Court called attention to Mr. Berger's review of the report in November 1982, noting that medical coverage was the only exception Mr. Berger lodged, information he had undoubtedly obtained from Sheppard. The Court further reminded her that Mr. Sheppard had personally reviewed the report prior to his parole hearing. Mrs. Sheppard responded to the Court's letter by stating that "the variable of communicated pertinence is at issue." Nothing further was heard from the Sheppards on this subject other than a communication from the "Committee for the Continuing Defense of William Sheppard," asserting that Sheppard was being punished without having been connected to the crimes for which he had been convicted by the Jury.

The objections to the pre-sentence report raised on this motion are:

1. that the report states that Sheppard has not returned any of the $1,256,356.80 embezzled;

2. that the report states that Sheppard received a larger portion of the proceeds of the criminal conspiracy because of his daughter's medical expenses; and

3. that the report's accounting of the proceeds of the embezzlement is inaccurate.

Regarding the first objection, the moving papers assert that the government subsequently has admitted that Sheppard returned approximately $15,000, upon advice of counsel, after an interview with Bankers Trust investigators in 1982, by depositing the funds into a bank account with the understanding that it would be returned to Bankers Trust; subsequently, that transfer was made. But the facts surrounding this $15,000 were matters the Court was fully aware of at the time of sentencing as a result of pretrial and trial disclosures. No reliance, therefore, was placed on the statement in the pre-sentence report that it was the government's version that "Sheppard has not returned any money." The balance of the government's version, in part, to which no exception has been voiced, either now or at any time previously, reads "[h]e maintains that the total amount he received was $43,000, which was his finder's fee for a business service rendered to Mr. Sramowicz, and that this $43,000 was earned legitimately." The report states that it is the government's version that approximately $450,000 had been recovered in cash and gold from co-conspirators other than Sheppard and that "[a]pproximately $800,000 remains unrecovered."

The government's version in the report also contains the following comment which is pertinent to Sheppard's second objection concerning the expenses of his daughter's illness:

It remains unclear exactly how the remaining $450,000 was actually divided among the three in New Jersey. It has been proposed that $125,000 was placed by SRAMOWICZ and BURKE into NRG Industries, Inc., SHEPPARD was given $125,000 to give to his anonymous "contact man," $150,000 given to SHEPPARD for himself, and BURKE and SRAMOWICZ received $50,000 cash apiece. The reason SHEPPARD was alleged to have been given the lion's share was because his infant daughter was seriously ill and outstanding hospital and medical bills were approximately $100,000.

Sheppard now claims that the medical bills were, at most, only $38,000 and had been virtually completely paid "before the embezzlement was even conceived."

Again, the conjecture as to where a substantial portion of the funds had disappeared was viewed by the Court at the time of sentencing as pure speculation by the government. The only significance that the Court drew from this portion of the report was that the disposition of the loot was unknown and the Court thus placed no reliance at the time of sentencing on these concededly unknown factors. At sentencing, the Court acted on its own perception of the facts and circumstances that had been adduced in evidence at trial, including the testimony of Sheppard, totally unworthy of belief, concerning his denial of any complicity in the scheme or of any personal profit. The trial testimony showed that Sheppard had a substantial hand in the laundering of the stolen funds; Sheppard was the one who opened a numbered bank account at the Summit and Elizabeth Trust Company, who arranged for the transmission of the embezzled checks from the Bankers Trust Company to that numbered account, who arranged for the purchase of gold coins, who instructed that the gold coins be charged to the numbered account, who instructed that the funds to pay for the gold coins be wired to the sellers of the coins, and who received the coins in the first instance. Sheppard's explanations of his participation in the embezzlement were weird and thoroughly unbelievable.

Regarding Sheppard's third objection to the report, suffice it to say that no one, to this day, has been able to establish an accurate accounting of the embezzled funds. This whole inquiry is filled with accusations, recriminations, and cross-accusations by the co-conspirators among themselves.

Sheppard's moving papers assert that the manner in which the proceeds of the embezzlement were divided could substantially affect parole and, therefore, should have been accurately summarized. Any

such summary is known only to the co-conspirators; neither the Probation Department nor the Court were able to ascertain accurately the underlying facts except that $1,256,356.80 was embezzled, that everyone but Sheppard admitted sharing the ill-gotten gains, and that no one was able to furnish an account that all agreed upon. This was the posture in which, together with the trial evidence, the Court imposed sentence. No reliance was, or could have been, placed on anyone's accounting of the proceeds and nothing included in the pre-sentence report rendered any substantive support or reliance by the Court to the detriment of Sheppard.

In short, it is fair to say that, based on the Jury's unequivocal verdict convicting Sheppard and on the facts and circumstances adduced at trial, with which the Court was thoroughly familiar, the Court sentenced Sheppard without reliance on speculative hypotheses. The pre-sentence report was couched with clear statements by the Probation Department regarding the source of the versions included in the report and did not provide any assistance beyond reference to the trial record itself.

The motion is, in all respects, meritless and is, in all respects, denied.

So Ordered.